# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. E. LESLIE, Minor.

UNPUBLISHED
October 13, 2015

No. 326098
Wayne Circuit Court
Family Division
LC No. 07-471481-NA

Before: GLEICHER, P.J., and SAWYER and MURPHY, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to the minor child, J. E. We affirm.

Respondent argues on appeal that the trial court clearly erred (1) when it found that three different statutory grounds for termination had been established by clear and convincing evidence, and (2) when it determined, by a preponderance of the evidence, that termination of respondent's parental rights was in J. E.'s best interests. We disagree in both respects.

"We review for clear error a trial court's factual findings as well as its ultimate determination that a statutory ground for termination of parental rights has been proved by clear and convincing evidence." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010) (citations omitted). "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made." *In re LaFrance Minors*, 306 Mich App 713, 723; 858 NW2d 143 (2014). This Court defers "to the special ability of the trial court to judge the credibility of witnesses." *Id.* Any related statutory interpretation poses a question of law to be reviewed de novo. *Id.*

First, we address respondent's arguments regarding the statutory grounds for termination cited by the trial court. Although respondent contends that the order of termination listed only three statutory grounds for termination, four grounds were actually cited in the referee's report and recommendation, which the trial court adopted and appended to its final order. As respondent recognizes, the trial court relied on MCL 712A.19b(3)(c)(*i*), (3)(g), and (3)(j). But it also relied on MCL 712A.19b(3)(c)(*ii*), which is a distinct statutory ground. See *In re JK*, 468 Mich 202, 210-212; 661 NW2d 216 (2003) (analyzing subsection (3)(c)(*ii*) as an independent statutory ground for termination). Since only one statutory ground need be proven to terminate parental rights, MCL 712A.19b(3); *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011), and respondent fails to contest the trial court's findings regarding subsection (3)(c)(*ii*), the instant

-1-

claim of error necessarily fails. Even if respondent is correct, and the trial court clearly erred regarding the other three statutory grounds it cited, reversal is unwarranted. *Ellis*, 294 Mich App at 32 ("Only one statutory ground need be established . . . even if the court erroneously found sufficient evidence under other statutory grounds."); *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009) ("Having concluded that at least one ground for termination existed, we need not consider the additional grounds upon which the trial court based its decision."); see also *In re TK*, 306 Mich App 698, 712; 859 NW2d 208 (2014) (" 'A party cannot simply assert an error or announce a position and then leave it to this Court to discover and rationalize the basis for [her] claims, or unravel and elaborate for [her her] argument, and then search for authority either to sustain or reject [her] position.' ") (alterations in original), quoting *Mitchell v Mitchell*, 296 Mich App 513, 524; 823 NW2d 153 (2012) (quotation marks and citation omitted).

In any event, the trial court did not, as respondent argues, clearly err by finding that MCL 712A.19b(3)(c)(*i*), (3)(g), and (3)(j) had each been proven as a statutory ground by clear and convincing evidence. The statutory provisions at issue provide:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds. . . .
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent. [MCL 712A.19b(3)(c)(*i*), (3)(g), and (3)(j).]

Respondent argues that the first statutory ground, subsection 3(c)(*i*), was not proven by clear and convincing evidence. She does not argue that the conditions that led to adjudication were remediated prior to termination, which is prudent given her admission at the final hearing that her substance abuse still precluded her from properly caring for J. E. Instead, she suggests

that she substantially complied with her treatment plan, thereby demonstrating a reasonable likelihood that the situation would be rectified within a reasonable time considering J. E.'s age.

But the record belies respondent's claim of substantial compliance. Indeed, at the final hearing she admitted that she still had a "drug problem" and—despite five referrals—she had not completed substance abuse treatment or benefitted from such treatment. In 2007, she already had a three-year "history of crack cocaine abuse." At the final hearing in January 2015—more than a year and a half after J. E. was removed—she admitted that she was *still* using cocaine and had done so within the prior two weeks. She also admitted regular marijuana use and that she was drinking "a lot," further suggesting that her last drinking binge had ended that morning around 2:00 a.m. She had never been compliant with drug screening. She missed 59 of 89 screens and tested positive for alcohol, marijuana, cocaine, or a combination of such substances every time she was tested. Although she completed parenting classes, a DHHS worker aptly opined that her continuing noncompliance evinced a failure to benefit from the classes. Finally, respondent openly acknowledged that she was "not prepared to properly care for" J. E. yet and had attempted suicide just a week before the hearing.

Respondent has a long, well-documented, admitted history of substance abuse. It prevents her from caring for J. E.'s most basic needs and certainly his unique educational and mental health needs. He was 11 years old on the day of the final hearing and would turn 12 just three days later. Despite more than one intervention by DHHS over a period of years, and respondent's many opportunities to address her problems by taking advantage of the various services she had been offered, she failed to do so. Her stated desire to change may be genuine, but it is also immaterial. In light of her history of failing to take the steps necessary to actually realize change, her hope that she *may* change did not demonstrate a reasonable probability that she ever will—let alone in a reasonable period of time given J. E.'s age. Thus, the trial court did not clearly err by finding that subsection 3(c)(*i*) had been proven by clear and convincing evidence as a statutory ground supporting termination. See *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014) ("This statutory ground exists when the conditions that brought the children into foster care continue to exist *despite time to make changes and the opportunity to take advantage of a variety of services. . . .*") (quotation marks and citation omitted; emphasis added).

For similar reasons, respondent's argument regarding subsection 3(g) is unavailing. She first contends that the trial court failed to clearly state any finding that she would not be able to provide proper care for J. E. within a reasonable time, particularly given his age. This is untrue. The "findings of fact" section of the referee's report, which the trial court adopted and appended to its order, concludes with the following paragraph:

> The mother [respondent] has a number of issues that she has failed to rectify since [J. E.] has been placed in foster care; in fact, evidence was presented that just last week [respondent] attempted suicide. [She] is not in the position to be reunified with her son and it does not appear that she will be any closer to reunification within the near future.

Respondent also argues that the trial court should have permitted her more time to demonstrate sobriety and undergo mental health treatment. Her argument presupposes that the

preceding year of service referrals did not afford her adequate time and opportunity to address her problems. Moreover, she fails to explain how the trial court's refusal to provide more time in hope of *future* improvement has any bearing on its factual findings about respondent's *past* noncompliance with her treatment plan. Since such noncompliance and failure to benefit from services "is evidence that the parent will not be able to provide a child proper care and custody," *id.*, the trial court's finding regarding subsection 3(g) was not clearly erroneous.

Regarding the third ground, subsection 3(j), respondent contends that, as there was no evidence that J. E. was ever *physically* harmed while in her custody, it necessarily follows that the trial court clearly erred when it found there was a reasonable likelihood that J. E. would be "harmed" if he was returned to her. But in the context of subsection 3(j), a reasonable likelihood of *emotional* harm can be sufficient to justify termination. See *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). As the trial court noted, J. E. had "been in foster care for a significant period of time and is at an age where permanent planning is essential for continued growth and development." It further found that there was no reasonable likelihood that she would be able to provide the permanency J. E. needed "within the near future," concluding that respondent would continue to neglect J. E. if he was returned to her care. Given J. E.'s age, special educational needs, and mental health issues, the trial court did not clearly err. On the contrary, the record suggests it was reasonably likely that J. E. would have suffered emotional harm if he had been returned to respondent's custody.

Having concluded that the trial court did not clearly err regarding the statutory grounds it cited, we turn to respondent's arguments regarding J. E.'s best interests. We review the trial court's findings in this regard for clear error. *LaFrance*, 306 Mich App at 723, citing *In re Trejo Minors*, 462 Mich 341, 356-357; 612 NW2d 407 (2002). MCL 712A.19b(5) provides, "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." Placement with a "natural parent" is heavily presumed to be in the best interests of a minor child. *LaFrance*, 306 Mich App at 724 (citations omitted). Indeed, a reviewing court must remain cognizant "that the 'fundamental liberty interest of natural parents in the care, custody, and management of their child[ren] does not evaporate simply because they have not been model parents or have lost temporary custody of their child[ren] to the State.' " *Trejo*, 462 Mich at 373-374 (alteration in original), quoting *Santosky v Kramer*, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982). However, "at the best-interest stage, the child's interest in a normal family home is superior to any interest the parent has." *In re Moss*, 301 Mich App 76, 89; 836 NW2d 182 (2013), citing *Santosky*, 455 US at 760. Thus, once a statutory ground for termination has been established by clear and convincing evidence, a preponderance of the evidence can establish that termination is in the best interests of the child. *Moss*, 301 Mich App at 86-90 ("[T]he interests of the child and the parent diverge once the petitioner proves parental unfitness . . . . Although the parent still has an interest in maintaining a relationship with the child, this interest is lessened by the trial court's determination that the parent is unfit to raise the child.").

Respondent claims that it is undisputed that she completed, and benefitted from, parenting classes. But a DHHS worker testified that, although respondent completed the

parenting classes—after being terminated from them on five prior occasions—she had *not* seemingly benefitted from them. Due to respondent's failure to "regularly visit" J. E. while he was in foster care, which showed "a complete disregard of the importance of the visits," the trial court agreed that respondent had not benefitted from the parenting classes. That finding was not clearly erroneous. Other than her own bald assertion, there is no evidence that respondent benefitted. The trial court relied on the DHHS worker's opinion instead of that expressed by respondent. Given the conflict in such evidence, the trial court's finding contains an implicit credibility determination to which we defer. See *LaFrance*, 306 Mich App at 723.

On the other hand, respondent correctly notes that a court may consider the parent-child bond in making its best interests determination. *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012). She fails, however, to recognize that a child's need for "stability and permanence" can outweigh even a strong parent-child bond. See *In re LE*, 278 Mich App 1, 29-30; 747 NW2d 883 (2008). Although J. E. was strongly bonded with respondent, the trial court nevertheless concluded that his "dire need" for permanence was the controlling consideration. Given respondent's history of substance abuse, mental illness, involvement in violent domestic relationships, and her inability to provide housing or document a legal source of income, the trial court's finding was not clearly erroneous in this respect.

Indeed, although respondent's bond with J. E. was an important consideration, it was one with potential to cut both ways. Respondent's weekly visits with J. E. had been sporadic. For instance, without any stated excuse, and despite "every effort" to encourage her attendance, she failed to visit him at all from June 14, 2014, to September 14, 2014. She had not visited him for two weeks before the final hearing, which included Christmas. And she had refused transportation or bus passes to permit visitation on numerous occasions. In light of the strong bond cited by respondent, her failure to attend scheduled visitations was understandably upsetting to J. E. Thus, given her seeming indifference to the harm she might inflict upon J. E. through her continued actions, in many ways respondent's bond with him was more harmful than beneficial. Such a bond can, of course, cut deeply when handled carelessly.

Respondent also contends that the trial court erred by making its best interests determination without first considering the permanency or suitability of J. E.'s residential placement. Citing *Mason*, 486 Mich at 142-143, and other cases involving placement with a relative, respondent argues that the trial court erred by failing to consider J. E.'s placement. She acknowledges that he was not placed with a relative at the time of termination, but she nevertheless contends that the instant scenario is comparable to *Mason*. Respondent argues that, as in *Mason*, here J. E.'s placement was simply too relevant to be ignored. She misunderstands *Mason*, construing its holding far too broadly. *Mason* simply held that, because "a child's placement with relatives weighs against termination under MCL 712A.19a(6)(a)," such placement is "an explicit factor" that must be considered *if it exists*. *Id.* at 164; see also *Olive/Metts*, 297 Mich App at 43 (examining the statutory rationale of the *Mason* holding). Since J. E. was not in a placement with relatives, and there is a dearth of evidence that he could have been so placed in lieu of termination, respondent's argument that the trial court was required to consider J. E.'s placement before terminating parental rights is unconvincing.

-5-

It is equally unpersuasive as a request for legal reform—a trial court already *can* consider a "child's need for permanency, stability, and finality," in its best interests determination. *Olive/Metts*, 297 Mich App at 42. Indeed, the trial court in this case *did* consider it, emphasizing J. E.'s need for permanence several times. To the extent respondent's argument involves policy considerations about how children should be placed, and the wisdom of termination generally, it far exceeds the scope of the best interests inquiry and raises questions that are nonjusticiable.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ William B. Murphy